UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SUN LIFE ASSURANCE COMPANY OF CANADA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No.: 3:14-CV-539-PLR-HBG ) |
| CONESTOGA TRUST SERVICES, LLC, As Trustee of Conestoga Settlement Trust, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

Plaintiff, Sun Life Assurance Company of Canada, commenced this action for declaratory judgment based on a purported fraudulent or illegal wagering or gambling scheme arising out of a life insurance policy issued on the life of Erwin Collins. Defendant, Conestoga Trust Services, LLC, is the sixth assignee of the ownership rights in the policy. Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Conestoga moves for entry of an order dismissing the complaint filed against it, and entering judgment in its favor on its counter-complaint for the proceeds of the life insurance policy. Sun Life opposes the motion, stating that the contract of insurance is void, and it is not obligated under law to pay the proceeds to Conestoga.

## I. Background

In 2008, Sun Life received an Application for Insurance seeking a $2 Million universal life insurance policy insuring the life of Erwin Collins, age 74. The Application identified the Erwin Collins Irrevocable Life Insurance Trust as the owner and sole beneficiary of the policy. Sun Life issued a policy with a face amount of $2 Million on March 13, 2008. Approximately two years after issuance, Sun Life received a series of requests to change the ownership and beneficiary of the policy. On May 25, 2010, Sun Life received a request to change the ownership from the Collins Trust to Caesura, LLC. On March 22, 2011, Sun Life received a request to change the ownership from Caesura, LLC to Manufacturers and Traders Trust Company. On August 9, 2012, Sun Life received a request to change the ownership from Manufacturers and Traders Trust Company back to the Collins Trust. On October 5, 2012, Sun Life received a request to change the ownership from the Collins Trust to Collins Missouri, LLC. On April 9, 2013, Sun Life received a request to change the ownership from Collins Missouri, LLC to James Settlement Services International. Finally, on April 30, 2013, Sun Life received a request to change the ownership from James Settlement Services International to the Conestoga Settlement Trust. Erwin Collins passed away on June 19, 2014. On August 13, 2014, Conestoga submitted a death claim to Sun Life for the proceeds of the policy.

Sun Life avers that the policy was at all times meant by the applicants as an illegal wager on the life of Mr. Collins. Sun Life further avers that the Collins Trust was itself an illegal sham created to give the false appearance of a valid insurance trust and thus, a legitimate insurable interest in the life of Mr. Collins. Sun Life further avers that the

source of the funds for the initial premium payment on the policy was not Mr. Collins or any person possessing an insurable interest in his life. Instead, the premiums were paid by persons or entities who were wagering on Mr. Collins' death so they could collect the $2 Million death benefit.

Sun Life avers that to disguise the true wagering nature of the policy, the applicants knowingly and intentionally misrepresented material information and affirmatively concealed material information from Sun Life so as to induce Sun Life into issuing a policy that it otherwise would have rejected. Some of the misrepresentations alleged include: (1) falsely representing that Erwin Collins established the Collins Trust for a legitimate estate planning purpose; (2) falsely representing that Mr. Collins had a legitimate estate planning need for a $2 Million life insurance policy; (3) falsely representing Mr. Collins' financial situation to create the appearance of a legitimate need for a $2 Million life insurance policy; and (4) falsely declaring in the Application that no other life insurance was pending or in force on the life of Mr. Collins, when the Collins Trust had also applied for and procured a $2 Million life insurance policy from Pacific Life before the Sun Life policy was issued and before the Application was signed and submitted.

## II. Analysis

After the pleadings are closed, a party may move for judgment on the pleadings. Fed.R.Civ.P. 12(c). The standard for ruling on a motion for judgment on the pleadings is the same as that applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Sensations Inc. v. City of Grand Rapids,* 526 F.3d 291, 295 (6th Cir. 2008). For purposes

3

of a motion for judgment on the pleadings, all well pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. *J.P. Morgan Chase Bank v. Winget,* 510 F.3d 577, 581 (6th Cir. 2007). The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not weigh evidence or evaluate the credibility of witnesses). The Court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* To survive a motion to dismiss under Rule 12 (b)(6), plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007).

Sun Life's Complaint alleges an illegal scheme referred to as stranger-originated life insurance (or STOLI). Pursuant to a STOLI scheme, stranger investors wager on the life of elderly individuals by procuring high face amount insurance policies on their lives. The death benefits are not payable to the insureds' families or loved ones, but to the investors, who have no insurable interest in the insureds' lives, and who wager that the insureds will die as soon as possible so that the death benefits can be obtained with the

4

least possible outlay of premiums, thus maximizing their returns. Sun Life alleges that Conestoga acquires and holds certain life insurance policies resulting from life settlement transactions for the benefit of investors who desire to acquire beneficial interests in such policies. The Eleventh Circuit described the scheme as follows:

> A STOLI policy is a speculative investment device that entails gambling on the lives of the elderly. In its purest form, a STOLI transaction works like this: A speculator secures an agreement with a person, who is usually elderly, authorizing the speculator to buy insurance on that person's life. The speculator usually gets the policy in the largest amount available and pays the premiums, hoping to profit in one of two ways. One way is if the insured dies before the premiums paid exceed the death benefit. Under that scenario the sooner the insured dies, the fewer the premium payments that are necessary to obtain the payout, and the greater the return on investment. The other way the speculator can profit is by selling the policy to another speculator for more than the premiums paid up to the point of that sale.

*Sciarretta v. Lincoln Nat. Life Ins. Co.,* 778 F.3d 1205, 1207-08 (11th Cir. 2015).

Tennessee tries to prevent STOLI schemes by requiring that purchasers of insurance policies have an insurable interest in the lives of insureds and by outlawing wagering contracts. *See* Tenn. Code Ann. § 29-19-101 ("All contracts founded, in whole or in part, on a gambling or wagering consideration, shall be void. . . ."); *Washington v. Atlanta Life Ins. Co.,* 136 S.W.2d 493, 494 (Tenn. 1940) ("A policy taken out on the life of another in whom the named beneficiary who procures the policy to be taken out has no insurable interest is void as a wagering contract and against public policy").

5

Given that Sun Life's averments must be accepted as true and that Sun Life is entitled to the benefit of all reasonable inferences arising from its factual allegations, it can be inferred that the policy at issue was an unlawful wagering contract that was procured through a STOLI scheme.

Conestoga asserts that Sun Life's claims are barred by the policy's incontestability clause, which provides that the policy cannot be contested after it has been in force for two years. However, Tennessee law holds that incontestability clauses do not operate as a bar to challenges that a policy is void as an illegal wagering contract, void for lack of an insurable interest, or void due to the invalidity of a trust. If a life insurance policy is void for any of these reasons, the incontestability clause is similarly void and without effect. *See Clement v. New York Life Ins. Co.,* 46 S.W. 561 (Tenn. 1898).

In *Clement*, the insured was encouraged to apply for a life insurance policy by two men, who had no insurable interest in his life. The two men paid the premiums for the policy and paid the insured money in exchange for his agreement to participate. Shortly after the policy was issued, the insured assigned the policy to the two men. One of the men assigned a portion of his interest to his two sons. After the insured died, the sons brought suit to recover their portion of the death benefit under the policy. The court dismissed the complaint, concluding that the complainants were not entitled to recover because the "transaction was a gambling or wagering contract upon the life of the insured," and that to recognize or enforce it would be contrary to public policy. *Id.*

In affirming the trial court's decision, the Tennessee Supreme Court found that an incontestability provision would not allow the complainants to recover the death benefit.

*Id.* at 562-63. Moreover, the court found that the incontestability provision "relates only to matters arising between the insurer and the insured, and not to matters in which third persons are concerned. *Id.* at 564. Thus, Conestoga cannot invoke the incontestability provision to legitimize its claim.

Conestoga next asserts that it is an "innocent bona fide assignee" under the policy. However, the Tennessee Supreme Court held in *Clement* that "the transfer and assignment must be in good faith, and not as a mere colorable evasion of the provision in regard to wagering contracts, and in order to validate or legalize the same." *Id.*, *see also Aetna Life Ins. Co. v. Hooker,* 62 F.2d 805 (6th Cir. 1933) ("The mere fact that an issued policy may be validly assigned to one not having an insurable interest has no legal significance in determining whether the policy was initially procured by one without such insurable interest"); *Volunteer State Life Ins. Co. v. Pioneer Bank,* 327 S.W.2d 59, 64-65 (Tenn.Ct.App. 1959) ("In this State, both at common law and by statute, a policy of life insurance is an assignable instrument and, when not forbidden by the policy itself, or otherwise, it may be assigned, in the absence of fraud or a wagering contract"). Thus, Tennessee law holds that a transferee's innocence or good faith would not revive a contract void from the inception as an illegal wagering contract. *Clement*, 46 S.W. at 595. An assignor cannot transfer to his assignee any greater rights in the contract than the assignor possesses under the contract. *Tenn. Ins. Guar. Ass'n v. Century Ins. Co.,* 2005 WL 1384878 at *7 (Tenn.Ct.App. June 10, 2005) (citing *Kennedy v. Woolfolk*, 4 Tenn. 195 (1817). As noted by plaintiff, once the policy has been tainted as a wagering contract, subsequent assignees take no greater rights in the policy than the initial wagerer,

7

and the law will not permit that illegal and void contract to become valid and enforceable by virtue of a subsequent transfer.  That being said, at this point in the proceedings, the record is not sufficiently developed for the Court to make a determination whether the insurance policy is void at inception as a STOLI scheme, or whether Conestoga is an "innocent bona fide assignee." Accordingly, the Court finds Conestoga's motion for judgment on the pleadings [Doc. 20] is premature, and the motion is **DENIED.**

Enter:

_____
**UNITED STATES DISTRICT JUDGE**

8

Case 3:14-cv-00539-PLR-HBG   Document 30   Filed 09/29/15   Page 8 of 8   PageID #: 257